UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DANIEL N. MBULU a/k/a<br>DAN N. GODFREY,<br><br>    Plaintiff, *pro se*,<br><br>        v.<br><br>BUREAU OF NATIONAL AFFAIRS,<br>INC.,<br><br>    Defendant. | Civil Action No.  04-1540 (JDB) |

**MEMORANDUM OPINION & ORDER**

On February 28, 2006, this Court granted summary judgment in favor of defendant the Bureau of National Affairs, Inc. ("BNA") in this race-discrimination action brought by an African-American former employee, Daniel N. Mbulu.  BNA now seeks to recoup the attorney's fees that it incurred in its successful defense against plaintiff's claims.  See Fed. R. Civ. P. 54(d)(2).  For the reasons that follow, the Court will deny defendant's motion.[1]

The crux of plaintiff's *pro se* complaint was that BNA's decisions to deny him noncompetitive promotions were the product of racial bias by his supervisor, and thus contravened Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq.

---

[1] The Court reaches the merits of defendant's motion notwithstanding the failure to include in its original motion for attorney's fees "a fair estimate of the amount sought," as required by Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, because "our judicial system[ ] [reflects a] strong presumption in favor of adjudications on the merits."  English-Speaking Union v. Johnson, 353 F.3d 1013, 1021 (D.C. Cir. 2004) (alterations in original).

("DCHRA").  Although the Court concluded that there was a triable issue as to whether plaintiff had suffered an "objectively tangible harm," as required for a Title VII or DCHRA claim, when he was denied promotion to a higher pay grade, the Court held that defendant nonetheless was entitled to judgment as a matter of law because plaintiff failed to come forward with sufficient circumstantial evidence to support a jury finding that race was a factor in the promotion decisions.  Not only had plaintiff fallen short in his attempt to create an inference of discriminatory intent through a comparison of his promotional history vis-à-vis his Caucasian counterparts, but the record was otherwise "devoid of even the slightest indication that defendant ... [had] used race in any way to differentiate among employees."  See Mem. Op. of Feb. 28, 2006, at 16-18.  Simply put, plaintiff was unable to make out one of the essential elements of a *prima facie* case of race discrimination.  The Court further held that, in any event, plaintiff had failed to rebut defendant's proffered race-neutral justification for its actions -- an assertion that plaintiff's work performance did not meet the standards required for a promotion -- and thus plaintiff could not have proceeded to trial on his disparate-treatment claim even if he had established all of the *prima facie* elements.  Id. at 18-20.

The Court also rejected any potential claim that other alleged actions taken by plaintiff's supervisor -- e.g., "confronting plaintiff about the use of e-mail during lunch and break periods, imposing limitations on plaintiff's personal use of BNA's telecommunications and computer equipment, requesting documentation to support plaintiff's use of sick leave, and engaging in what plaintiff describes as 'surveillance' of him during the workday" -- amounted to unlawful racial discrimination in employment because, regardless of any possible underlying motive for the actions, they did not result in a loss of benefits, a reduction of hours of work or salary, or a

significant diminishment of work responsibilities, and thus were not actionable under either Title VII or the DCHRA.  Id. at 21-23.  Finally, the Court ruled that plaintiff had failed to make out a *prima facie* hostile work environment claim because the evidence could not establish even an inference of racial animosity in the workplace, let alone the kind of "severe," "pervasive," or "abusive" racial harassment that is necessary to maintain a hostile work environment action.  Id. at 23-25.[2]

For all intents and purposes, the Court's judgment represented a total victory for BNA -- except that the case cost them an estimated $167,000 in attorney's fees.  See Def.'s Am. Mot. for Att'y Fees at 1.  BNA seeks recovery of those fees through a post-judgment motion, filed pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure.[3]

The common-law rule followed by federal courts is that, in the absence of either a showing of bad-faith or the existence of "legislation providing otherwise, litigants must pay their own attorney's fees."  See Christianburg Garment Co. v. EEOC, 434 U.S. 412, 415-17 (1978).  In a case such as this, however, there *is* "legislation providing otherwise." Section 706(k) of Title VII provides that, "[i]n any action or proceeding under this title[,] the court, in its discretion, may allow the prevailing party, other than the [EEOC] or the United States, a reasonable attorney's fee ...." 42 U.S.C. § 2000e-5(k).  This fee-shifting provision is flexible and discretionary, "authorizing the award of attorney's fees to *either plaintiffs or defendants*, and entrusting the

---

[2] The February 28, 2006, opinion and order granted defendant's motion for summary judgment and denied plaintiff's cross-motion for summary judgment.

[3] BNA separately seeks to tax plaintiff for certain litigation costs.  The bill of costs, totaling $2,166.90, is uncontested and will be "allowed as of course" by the Clerk of the Court.  See Fed. R. Civ. P. 54(d)(1).

effectuation of the statutory policy to the discretion of the district courts." Christianburg Garment Co., 434 U.S. at 416 (emphasis supplied).[4]

Congress's apparent purpose in authorizing fee awards under Title VII was "to clear the way for suits to be brought under the Act" by giving attorneys a financial incentive to take on meritorious cases for plaintiffs of limited means, while at the same time "protect[ing] defendants from burdensome litigation having no legal or factual basis." Id. at 420. Equitable considerations, however, require that district courts apply different standards for fee awards to defendants than they do for fee awards to plaintiffs. Murphy v. Bd. of Educ. of the Rochester City Sch. Dist., 420 F. Supp. 2d 131, 134 (W.D.N.Y. 2006) ("[F]ee-shifting statutes serve a different purpose depending on whether plaintiff or defendant happens to be the prevailing party.").

The Supreme Court has held that, because plaintiffs in civil-rights cases play the role of a "private attorney general" vindicating congressional policy, attorney's fees must be awarded to a prevailing *plaintiff* under section 706(k) unless special circumstances would render such an award unjust. Christianburg Garment Co., 434 U.S. at 416-17 (discussing the Piggie Park standard for awarding attorney's fees to a successful plaintiff). But where, as here, the prevailing party is a Title VII *defendant*, the presumption is reversed. Unlike fee awards to prevailing Title VII plaintiffs, fee awards to successful Title VII defendants should be exceptional rather than routine. See EEOC v. Quick Quality Rest., Inc., No. 04-cv-2472, 2006 WL 375173, at *1 (S.D.N.Y. Feb. 16, 2006) ("Prevailing defendants are not awarded attorney[']s fees as a matter of

---

[4] It is well-settled that a defendant may be considered a "prevailing" party, within the meaning of the statute, when it obtains a favorable judgment on the merits in a Title VII action.

course."). As the Supreme Court has said, "a district court *may* in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation ...." Christianburg Garment Co., 434 U.S. at 421 (emphasis supplied). The Court has cautioned against applying "hindsight logic" that would "discourage all but the most airtight claims" and has urged district courts to be mindful that "[d]ecisive facts may not emerge until discovery or trial" and that, "[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." Id. at 422. Moreover, the Court said that

> assessing attorney's fees against plaintiffs simply because they do not finally prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of Congress to promote the vigorous enforcement of the provisions of Title VII. Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in bad faith, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense.

Id.

Here, BNA does not contend that plaintiff acted with bad faith -- that is, with a subjective belief that his claim was unsupportable -- and the Court is aware of no evidence that would suggest plaintiff did so. Furthermore, as far as the record reflects, this is not a case in which the plaintiff attempted to use litigation to extort a settlement offer; nor is it a case where the plaintiff engaged in vexatious discovery or otherwise sought to run up his adversary's expenses. Rather, it was -- all things considered, and with one notable exception -- a relatively efficiently litigated case, proceeding from filing to the completion of briefing on dispositive motions in twelve

months.[5] Given the absence of any evidence of bad faith, the only question for the Court to consider, then, is whether plaintiff's claim was objectively frivolous, unreasonable, or groundless (either at the outset of the litigation or at some point prior to summary judgment), and, if so, whether plaintiff's failure to recognize that fact was so egregious as to warrant this Court shifting responsibility for some or all of defendant's legal fees pursuant to section 706(k).[6]

The Court's memorandum opinion on the motions for summary judgment confirmed that plaintiff utterly failed to meet his evidentiary burden and that he had based his case almost entirely on suspicion and conjecture about his supervisor's motives. Even so, plaintiff's suit was not wholly frivolous. As the Court earlier observed, a reasonable jury could have concluded based on the evidence that plaintiff met the basic qualifications for a noncompetitive promotion and that, therefore, BNA's denial of such a promotion to plaintiff was an adverse employment action for purposes of Title VII or the DCHRA. Although that is not nearly enough to establish *liability* under those statutes (or even to make out a *prima facie* case), when it is coupled with a

---

[5] By order dated April 26, 2005, the Court imposed a $200 sanction on plaintiff for his failure to search for documents that were responsive to a discovery request. Following a subsequent discovery-related motion (a motion for a protective order filed by plaintiff), the Court admonished both parties to make more deliberate efforts to resolve discovery disputes cooperatively and amicably. No additional disputes were brought to the Court's attention.

[6] BNA has advanced a standard for awarding fees to a prevailing defendant that is plainly inconsistent with Christianburg Garment Company. See Def.'s Mem. in Supp. of Am. Mot. for Att'y Fees at 7 ("Because this Court expressly found that [plaintiff] did *not* introduce 'evidence that, if credited, would suffice to support a judgment' in his favor, BNA is entitled to fees.") (emphasis in original). Indeed, the case that defendant cites as supporting that standard says something quite different. The court in Quick Quality Restaurants remarked that "[g]enerally, where evidence is introduced that, if credited, would suffice to support a judgment in favor of the plaintiff[,] a fee award to the defendant is *unjustified*." See 2006 WL 375173, at *1 (emphasis supplied and internal quotation mark omitted). It hardly follows that, as defendant asserts, the converse of that statement is true -- particularly since such a rule would automatically permit fee-shifting whenever a defendant was successful on the merits.

good-faith belief that race played a role in the employer's decision-making process, it may provide an adequate foundation for initiating a discrimination claim. There is, after all, no requirement that a plaintiff locate supportive evidence *prior* to filing suit. Cf. Johnson v. Nat'l Ass'n of Sec. Dealers, Inc., No. 81-cv-977, 1983 WL 613, at *3 (D.D.C. June 6, 1983) ("Although the [bench] trial vividly revealed the unsubstantiality of Plaintiff's claims, the Court is unwilling to assert that this action should never have been brought ....").

At most it could be said that, upon the completion of discovery and a review of all the evidence, plaintiff should have realized the futility of his claims and relented (e.g., by offering to stipulate to dismissal with prejudice or indicating consent to summary judgment for defendant). That would have mitigated the financial burden on defendant by eliminating numerous hours of attorney labor that undoubtedly were expended on motions practice. Were plaintiff represented by counsel, the Court might be more inclined to conclude that a partial fee award to defendant is warranted for that reason. Cf. Johnson, 1983 WL 613, at *3-4 (ordering Title VII plaintiff to pay attorney's fees for the period following the close of discovery because "[a]fter concluding months of discovery, it should have been painfully obvious to Plaintiff and her attorney that she could not muster enough evidence to establish even a *prima facie* case of discrimination"). But plaintiff in this case elected to proceed *pro se*, and the Court believes that plaintiff's status as an unrepresented party is a relevant factor weighing against the award of attorney's fees to defendant under section 706(k). Although plaintiff is a licensed attorney in the state of Florida, his professional legal experience is exceptionally limited and his filings in this case reflect an evident misapprehension about employment-discrimination doctrine.

It also bears mentioning that plaintiff did not persist in advancing his claims once the

Court had ruled unequivocally in defendant's favor -- thus minimizing the extent to which he continued to litigate his claims beyond the point at which they clearly had become groundless. In this regard, the circumstances of this case are very different from those presented in Murphy, on which defendant relies. There, the district court awarded attorney's fees to the defendant after a decade-long legal battle that had "grown from a simple employment dispute over one teacher's interschool transfer, into a gargantuan, broad-based campaign against an entire school system" and a "'virtual crusade' against defendants in which every injustice, insult, or inconvenience, real or imagined, ... was alleged to be a violation of plaintiff's civil rights." See 420 F. Supp. 2d at 134. Moreover, in contradistinction to the facts of this case, the Murphy case, "[f]rom its inception, ... was meritless and without foundation," "brought and pursued ... in bad faith, for the improper purpose of attacking the District and school administrators about [unrelated] matters," yet plaintiff "continued to litigate the case not only up to the granting of summary judgment, but afterwards, when the groundless nature of the claims had become readily apparent." Id. at 135. Although plaintiff's conduct here was not exemplary, it was not the sort of behavior that, as in Murphy, should result in an attorney's fee award to a Title VII defendant.

Hence, the Court concludes that an award of attorney's fees to defendant in this case would not be in keeping with the legislative purpose of section 706(k), as interpreted by the Supreme Court. All private rights of action inevitably impose costs on others (be they adversaries, third parties, or taxpayers), and quite often some of those expenses will be borne by parties who have been exonerated of wrongdoing. That is the allocation that the law dictates here, and it is supported by a rational policy choice about cost-spreading. The Court, however, is not unsympathetic to defendant's position, and nothing in this opinion should be construed as in

any way endorsing plaintiff's choice to prosecute this action.  That decision -- at least post-discovery -- was neither wise nor commendable, but it did not constitute the kind of reckless practice that would justify an award of attorney's fees to defendant.

For the foregoing reasons, it is this 31st day of August, 2006, hereby

**ORDERED** that [51] defendant's motion for attorney's fees, as amended, is **DENIED**.

/s/ John D. Bates
JOHN D. BATES
United States District Judge